Thomas M. Lancia PLLC
By:  Thomas M. Lancia, Esq.
22 Cortlandt Street
16th Floor
New York, New York 10007
212.964.3157

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
INSTITUTIONAL INVESTOR, LLC                         :

                              Plaintiff,            :        <u>COMPLAINT</u>

                - v -                               :        Jury Trial Demanded

                                                    :        17 CIV.
NOMURA INTERNATIONAL PLC,                           :
LIZ ATKIN, and SYLVESTOR OSEI

                              Defendants.           :
-------------------------------------------------------------X

     Plaintiff INSTITUTIONAL INVESTOR, LLC ("II" or "Plaintiff"), by its attorneys,

Thomas M. Lancia PLLC, brings this civil action against Defendants NOMURA

INTERNATIONAL PLC ("Nomura"), LIZ ATKIN ("Atkin") AND SYLVESTOR OSEI ("Osei"

and collectively, "Defendants") and complains as follows:

### PARTIES AND JURISDICTION

     1.      By this Complaint, II seeks statutory damages, actual damages, compensatory

damages, treble damages, punitive and exemplary damages, injunctive relief, and their attorneys'

fees and costs pursuant to the Copyright Act, 17 U.S.C. § 501 *et seq.* and for breach of contract,

fraud and deceit, and misappropriation of confidential business information and/or trade secrets.

     2.      II is a Delaware company with its principal place of business at 1120 Avenue of

1

the Americas, New York, New York 10036.  Nomura is a public limited company located at 1 Angel Lane, London, England EC3R 3AB.  Atkin and Osei were at all pertinent times employees of Nomura.

3.      Pursuant to 28 U.S.C. §§ 1331 and 1338(a), the Court has subject matter jurisdiction over the Plaintiff's claims for copyright infringement, brought under the Copyright Act, 28 U.S.C. § 501 *et seq.*  The Court has supplemental jurisdiction over the Plaintiff's remaining claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

4.      In their respective license agreements with Plaintiff, Defendants Osei and Atkin consented to the exercise of personal jurisdiction by this Court.  Additionally, upon information and belief, this Court has personal jurisdiction over Defendant Nomura because it (a) purposefully directs activities towards the state of New York, including product sales; (b) regularly conducts and solicits business in the state of New York; (c) derives substantial revenues from goods and/or services provided to customers in the state of New York; and/or (d) regularly and purposefully accessed Plaintiff's servers located in USA

5.      Venue is proper in this Court pursuant to, *inter alia*, 28 U.S.C. § 1400(a).

## FACTUAL BACKGROUND

6.      Euromoney Institutional Investor PLC ("Euromoney") is one of Europe's largest business and financial magazine publishers, delivering business information to various sectors, including finance, law, and energy, for over 35 years.  Euromoney publishes print and online magazines, journals, and newsletters among other things.  II is the United States subsidiary of Euromoney.  II owns copyrights in both of its print and online editions of publications, journals,

2

ebooks and the like. Among these online publications is II Alpha and II Magazine, exclusive daily information service focused on the hedge fund industry, providing updated news, features, analysis and data, including information about hedge fund firms and managers, analysis of trends shaping the hedge fund industry, and a hedge fund blog that covers daily hedge fund news.  II Alpha is provided through a password-protected internet website available only to subscribers ("Website"). II Magazine   Subscribers pay for single or multiple user licenses for a fee to access the content contained on the Website.

7.      The first time the Website is accessed by a new subscriber, he or she must indicate agreement with the terms and conditions of the Website before he or she is permitted to view the exclusive and unique content.  Among those terms and conditions in effect at the time Osei subscribed to the Website are provisions pertaining to use.  Section 3.2 of the Terms and Conditions expressly states that "[y]ou agree to use the Sites and the Content solely for your own personal use and benefit and not for resale or other transfer or disposition to any other person or entity." Further, Section 6.4 of the Terms and Conditions states that:

>  "Except to the extent a user name and password is intended for more than one
>  licensed user as agreed by us in writing, the following are not permitted:
>
>        a) any Registered User, Subscriber or licensed user under any
>        subscription sharing their user name and password;
>
>        (b) access through a single name and password being made
>        available to multiple users on a network . . . "

Finally, Section 15 of the Terms states "You agree to indemnify and hold us, our Representatives, licensors and sub-contractors harmless against all costs, claims, damages, liability and expenses (including any professional fees) which we might incur by reason of a breach by you of these Terms… this indemnity shall extend (without limitation) to any losses

which we may suffer as a result of the use by third parties of your user name and password…"

8.     Despite the terms of this license, the Website was used by Defendants well in excess of the use authorized by Plaintiff.  Indeed, the Plaintiff's internet website logs for Osei's and Atkin's respective subscriptions indicate a frequent, repetitive and nearly simultaneous access far in excess of a typical single user, including numerous occasions when multiple unauthorized users accessed the Website materials from different locations within a short amount of time.

9.     Plaintiff offers subscriptions to the Website in electronic format, allowing subscribers to browse and search the Website and its content easily and efficiently.  The format is updated frequently and new materials are added on a daily basis.  Emails are sent daily informing the user of the content and the user can save articles or other data in files maintained and controlled by the Plaintiff for easy access at a later date.  Each quarter, all of the articles posted to the Website during that quarter are made available to subscribers in one compilation, as a print supplement ("Supplement"), which is mailed to all subscribers.  Subscribers are able to email articles to other individuals.

10.     Every Website subscriber has a confidential password and identification number unique to his or her account. The password must be entered manually into the subscriber's individual computer terminal, laptop, or mobile device the first time that device is used to access the Website, which then triggers a technological process providing access to the Plaintiff's server by the server accessed by that individual computer terminal, laptop, or mobile device.  The servers in turn usually "talk" at least in part via satellite.

11.     The articles posted on the Website constitute original material authored by II. Plaintiff has complied with the copyright laws and is the exclusive owner of the copyrights therein, including all rights infringed by Defendants.

12.     Each quarter, each Supplement, including all articles published by II on the Website, is registered with the United States Copyright Office.  The applications for registration are currently pending with the United States Copyright Office for all applicable time periods. The registration applications mentioned in this paragraph are those applicable to the infringements discussed in this Complaint.

13.     II regularly polices the Website using Back Office Administration Tool ("BOAT") tracking software.  BOAT tracks every action taken by an individual user's account, including IP addresses, Website logons and article and page views.  This information is contained in an Excel spreadsheet containing confidential business information and as such cannot be attached to this Complaint on the date of filing.  When unauthorized access is suspected, II employees must sift through the information and compile it into a format that is readily and easily understood, taking up employee time at great company expense.

14.     Based upon the BOAT tracking software, well in excess of the single user who had individual subscriptions were using the Website. Nomura paid for the individual subscription. When subscribing to the Website, Osei and/or Atkin agreed affirmatively to the Terms and Conditions for accessing the Website by clicking on the button indicating as such.  At all pertinent times, Osei and/or Atkin was acting within the scope of their employment with Nomura.

5

15.     Despite the agreement by to abide by the Terms and Conditions, Plaintiff's Website logs confirmed that multiple users accessed the Website or the materials thereon.  These unauthorized users accessed the Website by receiving the confidential password from Osei and/or Atkin without authorization from the Plaintiff and logging on to the Website using the confidential subscription information, reproducing the articles and other content therein on their computer screens and/or downloading or printing copyrighted material without first seeking permission or authority from the Plaintiff.  Unauthorized Nomura employees further received the copyrighted materials from Osei and/or Atkin directly; Website subscriptions are meant for end users and not for dissemination throughout companies, as was occurring in this instance.  Nomura, at all relevant times, did nothing to corral the abusive infringing conduct in which its multiple employees were engaged.

16.     There is various conduct that indicates multiple users accessing the Website using a single user name, first the questions from Defendant Osei regarding the number of individuals who were permitted to access the Website and copyrighted materials during discussion of this issue prior to filing.  BOAT software tracked numerous examples of infringing conduct on Atkin's subscription.  At 15:14 on April 23, 2014, II Mag Ranking wad downloaded twice and accessed two times; in the next minute, the II Mag Ranking was accessed two additional times and downloaded again.  On that day at 17:41, two searches were performed for "top sovereign wealth funds," the Research and Rankings Website channel was visited, and II Mag Ranking was accessed.  The article "The Rich List" was viewed at 15:16 and 15:17 on April 23, 2014 while "Hedge Fund 100 Firm Profiles" was viewed at 15:18, and "The Hedge Fund Report Card" was viewed at 15:19; also at 15:19, the Hedge Fund Report Card Website channel and the Top Service Providers channel were visited.

17.     Two different articles were viewed at 12:03 on June 9, 2014 – "The Hedge Fund Report Card" and "Brevan Howard Asset Management" and at 12:05 "Hedge Fund 100 Firm Profiles" and "Bridgewater Associates" were both viewed.  On June 18, 2014, the Home channel was visited twice at 17:42 at the same time the Research & Rankings channel was visited, two searches were performed and an II Mag Ranking was accessed.  On February 9, 2015, two channels were visited and the article "The 2014 Alpha Awards: Top Administrators" was viewed; that articles was then printed at 18:51 at the same time the Top Service Providers channel was visited two distinct times and  "The 2014 Alpha Awards: Top Prime Brokers" was viewed.  At 18:52 that day, "Hedge Fund Compensation Rises Despite Firms' Lagging the Market" was viewed and the Research & Rankings channel was visited; at 18:54, three II Mag Rankings were accessed.

18.     Osei's account, admittedly used to disseminate information improperly to any Nomura employee who requested information, was also used in excess of a typical single user license.  Because each Website access or article view may have been in some way disseminated to Nomura employees at large, each of the activities tracked may be infringing.  At 16:30 on February 15, 2016, two channels were visited and the II Mag Ranking was accessed; at 16:31 "China Looms Paramount for Asia's Top 100 Asset Managers" was viewed and printed; at 16:32, the ResearchRankLanding channel was visited and the II Mag Ranking was accessed three times.  On May 12, 2016 at 18:59, the Home2013 and ResearchRankLanding channels were both viewed and two II Mag Rankings accessed.  The article "Asset Managers, Prepare to Have Your Business Disrupted" was viewed at 18:58 and 18:59 on May 20, 2016; later that day at both 19:04 and 19:08, "Britain's Public Pension Plans Hope Bigger is Better" was viewed; both of these articles were also printed at 18:59 and 19:08, respectively.

19.     On May 26, 2016 at 17:04, three different Website channels were visited.   One of the most telling indicators that multiple users were accessing Osei's account occurred on May 26, 2015 when Osei's account logged out of the II Mag website at 17:33 and then at 17:34 a cookie login was tracked; when a user manually logs out of a Website, he or she must manually re-enter their subscription information in order to access the Website again.

20.     Osei's subscription information for II Magazine was also tracked performing the following conduct:  at 18:34 on May 26, 2016, two different Website channels were visited and a video was viewed; at 18:35 the article "Another Greek Deadline Looms, but Perhaps With a Silver Lining" was viewed and printed; at 18:36 the article "Europe's Money Masters of 2016" was viewed, and the same article was printed both at 18:37 and 18:38; at 18:39, two channels were visited and the article "11 European Money Masters: Vital Statistics" was viewed; at 18:40 that day "Europe's Money Masters of 2016" was viewed again while at 18:41 and 18:42, "Peer Pressure: P2P Lending Poised to Shake Up Credit" was viewed.   On August 3, 2016 three Website channels were all visited at 11:59; at 15:03 that day, two channels were visited and the II Mag ranking was accessed twice and downloaded once. The ResearchRankLanding channel was visited once at 18:12 and twice at 18:13 on August 8, 2016

21.     On November 29, 2016 at 14:30 Osei's subscription used a form to log in to the Website and then at the same time was tracked arriving to the site from an outside source; also at 14:30, the Research & Rankings channel was visited two times, then the Managers & Funds channel was visited at 14:31, the Performance channel was visited at 14:33 and the Research & Rankings channel was again visited both at 14:34 and 14:38.  Similarly, on November 30, 2016, "Hedge Funds Rate Their Favorite Analysts in Asia" and "The Asia Hedge Fund 25: China's

Wild Ride" were both viewed at 16:06 and at 16:08, "The Asia Hedge Fund 25: China's Wild Ride" was printed two times.  Entries in the II Mag Ranking were accessed or downloaded a total of forty two (42) times on August 23, 2016 between 15:01 and 16:17.  In just a seven minute span on August 25, 2016, another sixteen (16) entries into the II Mag Ranking were either accessed or downloaded.  This type of conduct was rampant in late August 2016.

22.     The ResearchRankLanding channel was visited three distinct times at 15:55 on September 20, 2016; at 15:56 two additional Website channels were visited and at 15:57 the article "The 2016 Tech 50: Making Financial Services Faster, Cheaper, Bigger" was viewed two times; the same article was viewed on that day at 16:37, 17:27, 18:07, 18:38, 18:58, and 19:38.

23.     Access and use of the Website as described above, as well as other conduct shown in the BOAT tracking excel spreadsheet, can only be attributed to multiple Nomura employees using Osei's and/or Atkin's confidential password to access the Website without authority.  The unauthorized Nomura employees reproduced scores of articles by accessing and viewing them on the Website. It is undisputed that only Osei or Atkins, respectively, was authorized to access, view, download and print the copyrighted articles and newsletters contained on the Website during the relevant subscription period.

## AS AND FOR A FIRST CAUSE OF ACTION FOR DIRECT COPYRIGHT INFRINGEMENT AGAINST DEFENDANT NOMURA

24.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23 of this Complaint with the same force and effect as if set forth fully herein.

25.     Notwithstanding the provision of the Copyright Act that the display, distribution

and reproduction of copyrighted works may lawfully be made only by the copyright owner or with its authorization, Defendant Nomura has willfully and without Plaintiff's permission infringed Plaintiff's copyrights by engaging in the systematic, regular and repeated unauthorized access and viewing of the Website's various pages and the copyrighted articles contained therein.

26.      Plaintiff has been irreparably harmed by Defendant's unauthorized reproduction of their copyrighted works.

27.      In light of the foregoing, Plaintiff is entitled to the remedies provided for in 17 U.S.C. §§ 502 *et seq.*

### AS AND FOR A SECOND CAUSE OF ACTION FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST DEFENDANTS NOMURA, ATKIN AND OSEI

28.      Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23 of this Complaint with the same force and effect as if set forth fully herein.

29.      Individuals using Osei's and/or Atkin's personal user identification and password have directly infringed the Plaintiff's copyrights on a daily basis by, for example, accessing the copyrighted Website material without authorization and creating unauthorized reproductions in violation of Plaintiff's exclusive rights under 17 U.S.C. §§ 106, 501.

30.      Defendants are liable as contributory infringers for the copyright infringement committed via the use of Osei's and/or Atkin's subscription information.  By sharing this confidential information and failing to ensure unauthorized employees were not partaking in the infringement, Defendants caused, enabled, facilitated, and materially contributed to that

infringement.

31.     Defendants have actual knowledge of infringement.   Osei or Atkin, after purchasing a single subscription to the Website in their respective capacities as Nomura employee, shared the confidential information with other Nomura employees unauthorized to receive this information, knowingly allowing the unauthorized employees to view, print and otherwise reproduce the Plaintiff's copyrighted materials; Osei and Atkins also disseminated copyrighted materials to Nomura employees at large who were unauthorized to receive or view the copyrighted materials.

32.     Through the conduct described above, Defendants are contributorily liable for the infringement described herein.

33.     Defendants' infringement was willful, intentional, purposeful, and in disregard of the rights of the Plaintiff, and has caused substantial damages to Plaintiff.

34.     Plaintiff is therefore entitled to statutory damages and other remedies provided for in 17 U.S.C. §§ 502 *et seq.*

### AS AND FOR A THIRD CAUSE OF ACTION FOR VICARIOUS COPYRIGHT INFRINGEMENT AGAINST DEFENDANT NOMURA

35.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23 of this Complaint with the same force and effect as if set forth fully herein.

36.     Unauthorized Nomura employees using the Website have directly infringed on Plaintiff's copyright on a regular basis by the above-described conduct in violation of Plaintiff's

exclusive rights under the Copyright Act.

37.     Defendant Nomura is liable as vicarious infringers for the copyright infringement committed by the unauthorized use of Osei's and/or Atkin's confidential subscription information.  At all times relevant to his action, Nomura (i) had the right and ability to control and/or supervise the infringing conduct in sharing the Website logon information, and (ii) had a direct financial interest in, and derived substantial financial benefit from, the infringement of Plaintiff's copyrighted articles and other Website materials.

38.     Nomura derived direct benefit from the infringement by gaining access to information and data that they would otherwise not have had access to.  Nomura also avoided the business costs associated with purchasing the correct number of subscriptions for employees needing access to the Website and its content.

39.     Through the conduct described above, Nomura is vicariously liable for the infringement of Plaintiff's rights.

40.     Plaintiff is therefore entitled to statutory damages and other remedies provided for in 17 U.S.C. §§ 502 *et seq.*

## AS AND FOR A FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANT OSEI

41.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23 of this Complaint with the same force and effect as if set forth fully herein.

42.     Plaintiff and Osei entered into a valid and enforceable agreement, under which

Plaintiff provided single-user Internet access to the Website and a limited license for access by a single Nomura user, in this instance, Osei.  Plaintiff further provided a confidential password to Osei and Osei agreed that access would be limited to one user and not to permit any other person or entity to use the password to access the site or to use the password to access the site for anyone else. Osei further agreed that he would be the end user of the Website.

43.     Osei breached his agreement with Plaintiff by providing the password to multiple persons and permitting those persons to use the password to access the Website for purposes substantially in excess of his license.

44.      Section 15 of the Terms and Conditions for accessing the Website clearly states that a subscriber will be responsible for any professional fees incurred by Plaintiff as a result of his or her breach of the Terms, including sharing his or her log on information.  Osei shared his username and password with numerous people breaching the Terms and entitling Plaintiff to reimbursement of its attorneys' fees.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANT ATKIN

45.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23 of this Complaint with the same force and effect as if set forth fully herein.

46.     Plaintiff and Atkin entered into a valid and enforceable agreement, under which Plaintiff provided single-user Internet access to the Website and a limited license for access by a single Nomura user, in this instance, Atkin.  Plaintiff further provided a confidential password to Atkin and Atkin agreed that access would be limited to one user and not to permit any other

person or entity to use the password to access the site or to use the password to access the site for anyone else.  Atkin further agreed that she would be the end user of the Website.

47.    Osei breached his agreement with Plaintiff by providing the password to multiple persons and permitting those persons to use the password to access the Website for purposes substantially in excess of his license.

48.     Section 15 of the Terms and Conditions for accessing the Website clearly states that a subscriber will be responsible for any professional fees incurred by Plaintiff as a result of his or her breach of the Terms, including sharing his or her log on information.  Osei shared his username and password with numerous people breaching the Terms and entitling Plaintiff to reimbursement of its attorneys' fees.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR**
**MISAPPROPRIATION OF TRADE SECRETS AGAINST DEFENDANT NOMURA**

49.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23 of this Complaint with the same force and effect as if set forth fully herein.

50.    Plaintiff licensed a confidential password to Defendant Osei and/or Atkin for use only by a single user, and that password was an item of independent economic value used in Plaintiff's businesses to obtain an advantage over those who did know or use it.  Information contained in articles on the password protected Website contains actionable intelligence that companies who subscribe to the Website may use for mergers, purchases, and to predict market trends.

51.    The confidential password's value is derived from not being generally known to,

and not being readily ascertainable by, other persons who can obtain economic value from disclosure or use of the password.

52.    Without authorization from Plaintiff, Osei and/or Atkin shared confidential password with other Nomura employees; these employees misappropriated the password and used the password for their benefit when they knew they were not permitted to use the password to gain access to and reproduce copyrighted materials on their computers.

53.    Defendant Nomura's misappropriation of Plaintiff's confidential password was willful and malicious and caused irreparable damage to Plaintiff.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR FRAUD AND DECEIT AGAINST DEFENDANT NOMURA

54.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23 of this Complaint with the same force and effect as if fully set forth herein.

55.    To access the Website, Nomura's unauthorized employees misrepresented during various time periods in 2013, 2014 and 2015 that they were subscribers to the Website, when in fact only one subscription to the Website was ever purchased for any given time period, either by Defendant Osei.  By inputting Osei's or Atkin's confidential subscription information in order to log on to the Website, Nomura employees effectively represented that they were also subscribers to the Website because only subscribers received the confidential subscription information enabling them to access the Website.

56.    Nomura knew at all pertinent times that it was only permitted to have one user accessing the Website and still knowingly and intentionally allowed multiple employees to

access the Website.

57.    Plaintiff reasonably relied on the representation that Nomura employees were Website subscribers, as the confidential password issued to Osei or Atkins was used to gain the unauthorized access to the Website and its valuable copyrighted materials.

58.    Nomura's employees' misrepresentation caused Plaintiff to permit them to have access to the Website to its detriment.

WHEREFORE, II demands judgment in its favor and against Defendants, as follows:

(1) that Defendants and its employees and agents be permanently enjoined from, directly or indirectly, infringing in any manner any of Plaintiff's copyrighted material and from disclosing confidential passwords to unauthorized persons and entities, and from inducing, aiding, causing or materially contributing to such infringement, including the provision of confidential passwords to unauthorized users, and from violating the Copyright Act, 17 U.S.C. § 501 *et seq*.

(2) that Defendants be required to pay Plaintiff $150,000 in statutory damages for intentional copyright infringement for every instance in which Plaintiff's copyright was infringed to be determined at trial but believed to be in excess of ten. infringements totaling in excess of $1,500,000;

(3) that Defendants be required to pay Plaintiff its actual damages incurred as the result of Defendants' infringement of Plaintiff's copyrights;

(4) that Nomura be required to pay damages (such damages to include lost profits or Defendants' profits where appropriate), including without limitation treble damages, punitive damages, and exemplary damages, for misappropriation of trade secrets;

(5) that Osei be required to pay Plaintiff its direct and consequential damages incurred as the result of Osei's breach of its agreement with Plaintiff;

(6) that Atkin be required to pay Plaintiff its direct and consequential damages incurred as the result of Atkin's breach of its agreement with Plaintiff;

(7) that Defendants be required to pay Plaintiff their attorneys' fees and other costs of this action pursuant to their agreement with Plaintiff; and

(8) for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       June 16, 2017

                          THOMAS M. LANCIA PLLC
                          Attorney for Plaintiff **INSTITUTIONAL
                          INVESTOR, LLC**

                          *Thomas M. Lancia*
                          _____
                          Thomas M. Lancia, Esq.
                          22 Cortlandt Street, 16th Floor
                          New York, New York 10007
                          212.964.3157
                          tlancia@lancialaw.com